Good morning, Your Honors. May it please the Court, I'm Thomas Sines, representing the Plaintiffs' Appellants. In this matter, I'd like to reserve five minutes for rebuttal, if I could. Your Honors, this case involves two issues. First, how broadly or narrowly should we interpret the phrase electoral process as used in the Voting Rights Act, specifically in Section 203, the Bilingual Voting Materials section? The second question is whether the heavily regulated area involved in triggering a recall election in California is sufficiently infused with government involvement to constitute State action such that Section 203 should apply to petitions involved in that process. The case, as you know, comes to the Court in the context of a recall campaign involving a Santa Ana Unified School District trustee. A recall campaign suffused with issues of language. Specifically in the petition, there was an allegation that the recall officials had failed to comply with State law regarding the teaching of limited English proficient students. That recall campaign was then consumed by allegations that, in particular, non-English speaking voters were tricked into signing the petition, and a number of them stepped forward and tried to withdraw and successfully, in some cases, withdrew their signatures on the recall petition. Do you think that if we were to hold in your favor, it would create a circuit split? I believe that it would, Your Honor. To be honest and frank, Delgado and Montero, we believe, were wrongly decided. They resolved the two questions that I mentioned earlier, how broadly to define electoral process, and the State action question, wrongly. However, there is a way to distinguish them. I'm not certain that it satisfies me. But those cases came up in the context of the initiative petitions. And if anything, there is greater State involvement when you have a recall petition, precisely because recall petitions are required under California State law. It's kind of hard to distinguish those facts, isn't it? I'm sorry? Pretty hard to try to distinguish the initiative petition from what we've got here. It is, Your Honor. In all candor, it is hard to distinguish those two cases. But the distinction that I was going to explain is that in a recall petition, there is a requirement that the petition circulators have to include in the petition a statement by the targeted official. So you actually have to include a statement by your opponent. Obviously, that's not involved in an initiative petition, where you're only presenting your argument for why an initiative should be enacted, and you're not at all required to present the other side at all. In this context, you are required to present some element of the other side's views and required to include in the petition form a statement by the recalled or the targeted official relating to the recall. If we agree with you, I gather any petition in your county will have to be in English, Spanish, Korean, Vietnamese, and Chinese. Just those four languages, Your Honor. Well, maybe there are four. Four additional languages, yes. I'm sorry. Chinese, Korean, Vietnamese, and Spanish. I realize there has been some discussion about what a burden that would be, and I did want to address that. Well, whose burden is it? First, I think it's clear that it's the State's burden. It is an obligation of the State to comply with Section 203. So it would fall on the registrar to ensure that translations of the petition form and content are provided to the petition circulators in the covered languages. Now, whether the registrar could charge the petition proponents to do that translation is not a question that I'm prepared to answer at this point. And certainly in other contexts, there are charges for pursuing the filing of petitions related to this. That will certainly make petitions pretty expensive if they do get charged. Well, I think it's important to remember, Your Honor, that the basic format of a recall petition would only have to be translated once, the form that says this is a petition to recall the subject official, names the official. Here is the position of the proponents. Here are the addresses and names of the proponents. Well, it would have to be translated into five languages, four other languages. Yes. But they'd only have to do that once with regard to the actual format. And then with each specific petition, there's a brief statement regulated by statute in length and how it is presented by the proponents, and then one also regulated so it's fairly short, by the targeted official. So with each new petition, you'd only have to translate into those languages two brief statements, one by those proposing the recall and the targeted official. Well, you're representing the proponent, right? No, Your Honor. Oh, you're representing the other side. We represent voters who were misled into signing the recall petition and actually opposed the recall. But I think it's an interesting use of this act because it's upside down. I mean, you're really saying we want the petitions to be translated so we can not participate. Well, actually, so that you can begin. Because we don't want to sign this petition. Therefore, we want to translate it into our language. I mean, the Voting Rights Act was kind of passed because we want these things put in many languages so all the people, nobody will be excluded from signing. And you're saying we really want them translated so we can exclude ourselves from signing. Well, Your Honor, I think that's only partially true. I think that if you look at the electoral process, the language that's used in the statute, in its broadest sense, broadly interpreted as the Supreme Court has advised us with respect to the Voting Rights Act, the electoral process involves lots of things, including campaigning against a potential recall even before it's qualified for the ballot. So that if you become aware by someone approaching you, we'd like to have you sign this petition, and you get a chance to read it and understand that they're targeting an official who you deeply support, then you have the opportunity to begin to counter-organize, whether that's by starting your own recall petition against another official, because not in this case, but in other contexts that we can all recall, there have been elected officials who are actually targeting other elected officials for recall. So part of a counter-campaign could involve a recall petition of your own. It could involve going to the newspapers and using the media to begin to frame the issue from your perspective and not from the perspective of the recall proponents. The electoral process, in other words, begins with the petition signing, petition circulating, not just for those in favor of the recall, but for those who might oppose it as well. But it is important to note, Your Honor, that what we're seeking here would benefit both potential opponents of recalls and proponents of recall. If, for example, you had a group of voters in Orange County who wanted to recall an official, and they realized that the greatest support for such a recall would be in the Latino community and specifically among Spanish-speaking citizens, and sought then to circulate a recall petition, but in a language that would be understood by their targeted population, they couldn't do so under the law. What they could do is provide their own translation together with the official registrar-provided English petition, but that translated petition would be their own. Kennedy. Does the law now require the petitions to be in English? Carvin. I'm sorry? Kennedy. Does the law now require it? Carvin. Yes. Under California law, there is an established form for the petition. That form is in English and only in English. So the registrar would receive a form that is in English and would review, as State law requires him to do, and provide it back to the recall proponents, an English-language petition. Now, under existing law, proponents who wanted to target the Spanish-speaking community could then translate it of their own accord. But, of course, it wouldn't be an official translation. They would be subject to accusations that their translation was not sanctioned, was inaccurate, and they might even face a challenge. In fact, I would predict they would inevitably face a challenge that their circulating an additional Spanish-language petition was, in fact, in violation of State law. It just makes the point, Your Honor, that while this case was brought by opponents of this particular recall, there are Spanish-speaking voters in Orange County who may, in other circumstances, be proponents of a recall, and they are still harmed by the registrar's position that Section 203 does not reach those petitions. If this Court holds in your favor, what is the effect? The election is long since gone. I believe the person who replaced the person who was recalled has been reelected to a new term. The declaratory relief may be there. Comment on that, please. It's a very good question, Your Honor. It is true that Mr. Richardson, the official who was elected at the recall election, was reelected in a regularly scheduled election last November, three months ago. So as a result, it moots clearly any request to remove him from office or to restore Mr. Lopez, the recalled official, to office. But this is a case that is against the registrar by voters who believe that their ability to participate in the electoral process in California, a process that more and more is involved in the circulation of petitions to recall officials or to enact laws through initiatives or to engage in referenda, that their ability to participate in that electoral process is hampered by the registrar's interpretation that he need not. Is it just a nice hypothetical pronouncement as to the law out there to guide people in the future? Is there any more direct effect on the school district or the officials there? At this point, Your Honor, all there would be is a declaration that a recall was conducted that was not consistent with the Voting Rights Act and Section 203. You simply can't get around the fact that three months ago, the official who was elected by the recall was reelected at a regularly scheduled election. There's obviously nothing that can be done to remove him or to restore the official whose term would have ended. Would we be rendering an advisory opinion? No, I don't believe so, Your Honor. The plaintiffs are still voters in Orange County. They are still affected by the registrar's position that petitions do not need to be provided in covered languages. They would be affected whether they were proponents or opponents of any future petition matter, whether that's recall, initiative, referendum. That issue could come up the next time there's a recall petition. Well, I fear Your Honor. While the iron's hot. I fear Your Honor. What you're doing is kind of interesting because it would make, I think, the use of the recall mechanism more complicated and burdensome. Then you'd have to have the petition in five languages. I mean, that certainly wasn't done in the last statewide recall election we had. That's correct, Your Honor. And in a statewide recall, it would be required within those counties that are covered jurisdictions, and there are many of them in the state of California. Let me address your mootness question first, and then I'd like to address the remedy issue that I think you have raised. Well, you almost have to have the petition cover all those languages because people move around from county to county. Actually, under state law, you're only allowed to circulate in one county for a given petition. So you actually have to indicate which county you're circulating it in. So you can't take the same petition form, even for a statewide recall, and circulate it one day in L.A. If you're circulating it in L.A., and someone comes down here from a county in Kern County, can they sign the one that's being circulated in L.A.? I don't believe they could, Your Honor, because you're going to submit those petitions to the L.A. County Registrar, who is going to verify them against her roles. And obviously, she would not have access to the Kern County roles. That's true even for a statewide recall, where each of the county registrars does an independent determination of the petitions and counts up the number of signatures that they believe to be valid, and then sends that to the Secretary of State, who compiles the 52, or however many there are together, and makes a final determination whether the statewide total has been reached or not. With respect to the burden, though, Your Honor, I think, having thought about this, all that's involved here in Orange County, for example, is placing on a recall petition four lines, one in each of the languages, that says this petition is available in Spanish, for example, ask the circulator. And then requiring that every circulator carry with them a version of the petition in each of those languages. When you're talking about four languages, these petitions are not long, because they ordinarily come at the top of a page that has at least a half a page of blanks for signatures. So you're talking basically about double-sided one page. You could put half page in Spanish, half page in Vietnamese, flip it over, half page in Korean, half page in Chinese. Every circulator would have to carry that single sheet with them, show the petition to someone, and if they see it in a language, and it says it's available in their language, they can ask for it, and the petition circulator would then have to provide it to them. It's really not such an extraordinary burden when you consider that possibility. I'd like to go back, though, Your Honor, to the question that you raised about mootness. I am sorry that we're here three months from when the next election occurred, but it does suggest also that even if there was not a live controversy, because these are still voters in Orange County who rely on bilingual materials and will be affected by the registrar-continued policy of not complying with Section 203-S petitions, even putting that aside, this is the kind of a case that is capable of repetition, yet evading review. This is a case that was determined by the district court in early 2003 with a preliminary injunction. We came to the Ninth Circuit immediately before the recall election. Before an emergency motions panel sought to stay the election, we lost that on a two-to-one vote, and as a result, the election occurred in February, and so our preliminary injunction request was then moot. We had to dismiss the appeal before this Court at that time. We were then left with the only recourse to get to this Court of waiting for a final judgment, which came in June of 2003. We're now before you in February 2005, and three months ago, it is correct, the official who was elected at the recall was reelected in his own right. But that timing suggests that given the terms that are often involved for recalled officials and that recalls can occur at any point after they've been in office for a year, that this is kind of all behind us. Is there a case or controversy that continues here? Yes. Again, Your Honor, I believe there is, because these are still going to affect the facts we have before us in this case. It's not going to affect Santa Ana School District unless there is a further recall effort or initiative effort that involves that school district. But these plaintiffs are still voters in Orange County who are impacted by any petition, whether circulated for recall or initiative or referendum, that is not circulated in a language on which they rely to participate in the electoral process. I mean, we can move very quickly in this circuit. We can file it with the district court, get a quick hearing there, come up here and get the matter heard. And if your request for injunction is denied, you can always ask that the matter be expedited. And, you know, we can assemble a panel in a matter of days. Your Honor, again, that's what we did here. We did seek an appeal on the denied preliminary injunction. We got a motions panel on our emergency motion to stay the election, and the panel decided two to one not to issue the stay. Of course, that's not a published decision. At that point, there were only a few weeks before the election in February. You could call for an in-bank. We could have petitioned for rehearing in-bank at that point, Your Honor. That's correct. That's what they did in the case involving the petition to recall Gray Davis. Yes, Your Honor. I guess in hindsight we could have tried that, although I suspect that the amount of attention the trustees recall in the Santa Ana Unified School District, the controversy engendered by that pales in comparison to that of the unprecedented recall of the governor of the entire State. But, yes, it is correct. We could have chosen to petition for a rehearing. Actually, that in-bank was called sui sponte by this Court. Yes, extraordinary circumstances, of course, and I don't think they would necessarily have applied to this issue involved in this case. Again, we expected. Judge Canby's right. It was called sui sponte. Again, we expected that we would be here before the term was concluded, and there was another election involving the official who was elected at the recall. Obviously, we're three months off the mark on that. Okay. I will reserve my time for rebuttal. Thank you. Good morning, Your Honor. Wendy Phillips, Deputy County Counsel, appearing on behalf of Respondents of the Orange County Registrars. And Bill Schaefer on behalf of the amicus, Santa Ana Unified School District and its Board of Education. And, Your Honors, I will be sharing my time allotting approximately three minutes toward the end of the argument for amicus to be heard. First of all, I'd like to address some of the issues that were raised by the panel in — during appellant's argument. First of all, it seems a theme of what is the result if you do confirm the position proposed by appellant, i.e., that the Section 203 minority language requirements are applicable to the recall petition process. The results are far-reaching. First of all, as Judge Reed noted, it would create a split between the circuits, because the Tenth and Eleventh Circuits have already directly spoken to this exact same issue. And their decision was contrary to that proposed by appellants in this matter. So there would thereby be a split between this circuit and the circuits of the Tenth and Eleventh Circuits. Also, a question was raised if it would apply to other petition processes. And I think, based on the theory proposed by the appellants, that there's no question that their theory is broad in scope, that if Section 203 applies to the recall petition process, it would necessarily have to apply to the initiative process as well as the referendum process. As a practical matter, appellants ought to have a — Scalia, do you have a — Excuse me. I'm sorry? What's wrong with that? It's a question, as you were addressing, of slowing down the process and making it more difficult and cumbersome to accomplish what is a right reserved to the people, not a right reserved to the State. It's not a State function. The recall petition process, the initiative process, the referendum processes, those are all reserved to the people by Article II, Section 13 of the State Constitution. And that reservation of right to the people — If you wish to have the, you know, contents of what's stated in English and Spanish, you know, look at the reverse or we'll supply you with a copy of that language in Spanish. Your Honor, with regard to a recall petition, it would require in the county of Orange alone that four lines be on that recall petition that says, ask for this in Spanish in Spanish, ask for this in Vietnamese in Vietnamese, ask for this in Korean if you speak Korean, and I believe the other language is Chinese in Orange County. That's Orange County alone. The implications of a declaratory judgment from this Court finding the way appellants propose are State-wide, because if it applies in Orange County, it must apply to every other county that is subject to the 203C requirements, and the State is also subject to those requirements. Because it's a mere baseline of a 5% of the voting population speaking a particular language for the minority languages to attach. So the — I wonder about the situation where, you know, most of my experience with this is you come out of a market and somebody's standing there with a petition and they mumble a few words and they ask you to sign it. And a lot of people just go up and sign it. That is correct, Your Honor. That is the process. But if you — Yeah. Let's go to the recall election of Governor Davis. If that recall election were ensuing and if 203C required that those private petitioners, those private proponents who are exercising their right of free speech and in the electoral process their right to franchise, to target Governor Davis and ask to recall him, if 203C applied, then statewide in every single county that recall petition would have had to have been translated into every language. It's not in the record, but I believe Los Angeles has eight minority languages. I don't know the other minority languages statewide. But it would be such a cumbersome process. Now, appellants say that it wouldn't necessarily be the proponent's duty to effect the translation, that it would be the State's burden to do so, and the State may or may not charge for that. But let's consider the practical impact of that, that recall petition of Governor Davis. If it would have had to have been translated into every language required statewide, how long would that have taken? Probably until Governor Davis's term had expired and the proponents and the electorate who wished to recall him would not have been able to do so, because the process would have been so encumbered, the private citizen process that the recall election or the recall petition process represents. And then the private citizen just ought to go out and make sure that the only voters they contact are those that speak English? Is that it? Well, there's nothing that can prevent that from happening in the first place. If you know that you have a particular initiative that you want to pass or a particular elected officer that you want to withdraw, you're going to target the community that has the type of electors in it that are going to support your initiative. That is the exercise of their freedom of speech, of the proponents of initiatives, of referendums, of recalls, their right to free speech, and a right specifically reserved to them by the California State Constitution and the statutes. Also going to the issue of the cumbersome and the practicality of implementing the appellant's position, presuming it does apply to referendum petitions, I'm sure this Court is aware of that. A proponent of a petition had a little card table and sat outside of a supermarket and had a sign that said, only those who speak and can read the English language may apply here to sign a petition. All others go away. Your Honor, I think that's a... Are you all right? I'm not saying that that would be all right. I think that's a completely different case, though, and it would be a question of possible discrimination under 1981. And that's not what we're discussing here. We're trying to discuss and determine whether Section 203 requirements, which is specifically defined by the Act, is a burden that should be imposed upon private proponents of the initiative process, the recall process, and the referendum process. I guess I'm elaborating a little bit because I picked it up as Judge Ferguson did on what you said, but there would, in your view, I guess, be no violation of any law if a circulator of a petition just told somebody who came up to sign it that I don't want you to sign, not because of your race or anything else, just because I don't like the color of your shoes. Your Honor, I don't know. I can't speak to whether or not that would be a violation. Is there a right to sign a petition that's being circulated? Not under the Voting Rights Act. And that is our position, because the position that we have taken is that Section 203 is relating to State action, and that the petition process being initiated by private actors is not controlled by Section 203C, because until an election is set, there is no State action. And it's a level of State action. Well, let's look here at the Section 1973AA-1AC. It says, requires, well, I'm just paraphrasing that. It requires translation into the jurisdiction's minority languages whenever a State or political subdivision, quote, provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process. Yes, Your Honor. That is the exact language. Doesn't all this relate to the electoral process? We do not believe it does. Well, it doesn't? Well, that's what it results in. It results only if the proponents of the petition manage to gather sufficient number of signatures during the election. But it relates to it. Your Honor, the cases that are relied upon by appellant, the Section 5 cases, the Voting Rights Act itself, the policy behind the Voting Rights Act is to prevent discrimination in voting, to prevent the disenfranchisement of individuals. Now, sure, the Section 5 cases have been interpreted broadly. Those are jurisdictions that are subject to preclearance requirements. And in those jurisdictions, there was overt discrimination against minorities that led to the adoption of the Voting Rights Act. The minority language requirement is not of the same level as that, as the Section 5. And specifically, the Supreme Court has most recently, in their decision of Morris v. the Republican Party of Virginia, discussed whether or not the breadth of analysis that Section 5 is given, if all other sections of the Voting Rights Act should in fact be interpreted the same. And the trend of the Supreme Court is to not give other sections of the Voting Rights Act, Section 2, Sections 4, Section 203, the same breadth of interpretation and application, to instead look for that State action, and to also focus in on whether or not there is some sort of violation of a voting right. And our position is that the recall petition does not represent a voting right. Judge Canby, you focused on the fact that basically appellants are saying, I want it translated so I can read it and not sign it. How does that interfere with a voting right? Also, if this Court determines that it is, in fact, a voting right to be able to sign a petition, the next lawsuit will be from John Doe Citizen, who never got approached with the petition. I assume there's nothing wrong with people who are supporting an initiative to confine their campaign to half the State. Exactly. All they need to do is gather a sufficient number of signatures, whether it be for initiatives, petitions for recall, what have you. And if the Voting Rights Act does apply to initiative petitions, to recall petitions, then it applies for all purposes. And you as a citizen could claim that your voting right was affected, infringed, or you were disenfranchised because you were not given the opportunity to sign or not sign that petition. That cannot be the intent of what Section 203c is. But there might be another case. Well, but, I mean, in an election, of course, the State election has a duty to provide polling places all over the place and everything, so you have a right to vote. And is there anything to support your view, though, that applying this language requirement would necessarily involve applying all the rest of the Act to initiative petitions? I believe Appellant's argument rests upon the fact that in order to find on their side, you must find that the Voting Rights Act, specifically Section 203c, applies to the petition process. Now, if Section 203c in a minority language requirement applies, then it's not far-field to suggest or believe that the other sections must also apply. Well, only if they have this relating, you know, and providing, and same kind of language. Well, the definition of a vote, which is part of the general Act, found in 1973, I believe, c, specifically discusses how a vote and what the Act is intended to pertain to. And so I believe if you apply a particular section to the recall petition process, then because you find that it is the electoral process or because it is a prerequisite to voting somehow, and by not being allowed to sign or by not being presented with a minority language requirement, that they're somehow deprived of the right to vote. And I think that's what we have to do, is we have to go back to the purpose and policy that drove the Voting Rights Act. And that purpose and policy is to prevent discrimination in voting. All of the cases that are relied upon by Appellant are cases that were overt discrimination, dating back to the white primary cases, which, of course, were not voting rights cases, but rather 14th and 15th Amendment cases. Those were overt laws by the State. For instance, Nixon versus Condon, the State of Texas had a law that said blacks can't vote. When that got struck down, they made a law that blacks can't vote in primaries. That got struck down. So every single case that is discussed by Appellants and that they encourage this Court to apply are definitely broad interpretations. But if you go to the meat of the issue presented by the cases, the meat of the issue is the ultimate denial of the right to vote. It disenfranchises in some way, shape, or form the voter or the proposed candidate involved. For instance, Allen versus State Board of Education, State Board of Elections is highly relied upon by Appellants. In that case, the Supreme Court considered various schemes that were implemented in, I believe, the State of Mississippi that were changes to their law. And the question was whether or not the Section 5 preclearance pertained to them. In each one of those instances, the Supreme Court found that Section 5 did apply because ultimately the change proposed by the State resulted in either a vote dilution, the potential disenfranchisement of a particular voter, or increased the burden upon a possible candidate to the extent that you must find that the policy of the Voting Rights Act was being violated. So what we're asking the Court to do is look behind the Voting Rights Act as well as look at the plain language. Nowhere in the plain language of the Voting Rights Act does it mention the idea of petitions. The wording there, any form or other materials relating to the electoral process, is pretty broad stuff. Don't you think this recall petition would fit into that? Relating is a pretty broad modifier. Right. And Appellants in their reply brief, in fact, focused strongly upon what does related to mean, and when used in statutes, that it generally has a very broad scope. But one of the cases that they cite in support of that broad interpretation of the words related to is the case of Aloha Error. And Aloha Error, though it does adopt the idea that, yes, you do have to give broad meaning to the use of the terms related to, you should not give such broad meaning to the use of the term related to that the connection is too tenuous, too remote, or too peripheral to the purpose of the act. Let me read you what Black Law Dictionary says about the word related. It defines related to mean to stand in some relation, to have bearing or concern, to pertain, refer, to bring into association with, or connection with. And, I mean, these recall petitions, their purpose is to trigger a recall election, right? Their hope is to trigger a recall election. And that is where their purpose is to trigger. What difference does it make whether it's purpose or hope? Your Honor, we think that it's a big difference. Really? Yes. Or a purpose to trigger a recall election and are inextricably tied to the electoral process. Correct. And I believe the word is inextricably tied. And then you have the government entity reviews and approves the recall petition for circulation. Isn't that true? That is true. But that doesn't rise to the level of State action necessary. I can refer the Court to the 1982 Supreme Court case of Bloom v. Yaretsky, which was relied upon by both the Delgado and the Montero courts. You get all this here. You probably won every moot court competition in the country. No, Your Honor. I didn't. You should have won. Good. Okay. Your Honor, as I see my time is running, I'd be happy to address any questions that I certainly want to. Excuse me. Go ahead. We can experiment. It looks like there's pretty heavy State involvement here in the recall petition. The registrar of voters has to approve the form and content of the petition. Verify the signatures. And so even though the registrar of voters does not write this stuff up, it looks like the State involvement is pretty heavy and might fit the provided requirement. What about that? Your Honor, we don't think so. And we think that the Montero and Delgado courts were correct in their analysis of this issue. And the point is that the type of actions required by the elections official in any petition process are merely ministerial. That's how the Delgado and Montero courts define them. But maybe more than ministerial, you have to approve the content of the petition. I don't believe the content is approved. It's a question of whether certain parts of the form are in fact present. The registrar looks at it for the purpose of determining does it have a title, does it have the statement of intention to recall, which is written and done by the proponents. The registrar has no ability to evaluate the substance of that or to reject it based on the substance. It can be offensive or what have you. It is not the registrar's ability to strike that language or change the substance of it. It is merely ministerial to look and make sure that, in fact, there is a statement of intention. So you're saying that the verification of the content is just to look for the – it's got a title and some things like that? Correct. And I believe that is also what the district court found in her findings – the district court judge found in her findings of facts and conclusions of law, that the involvement of the elections official is so ministerial because it's just basically going down a checklist. Does it have a place for signatures? Did they give the opportunity to answer to the target of the people? Does it have to be in English? Your Honor, I do not know the answer to that question. I do not think the law is explicit on that issue. I cannot say what would happen if a Spanish-speaking proponent of a recall walked into the registrar's office with a Spanish petition. That might be a future case, but not this one. Yes, Your Honor. I believe that that is true. Your Honor. Your Honors. In closing, we would just like to say that we think that the district court should be affirmed because we believe that the granting of the motion for judgment on the pleadings was proper. There were no disputed issues of material facts. There were only questions of law remained. And the district court was well within the realms of reason of relying upon the Delgado and Montero cases. And in making her decision that there was no ---- What about case or controversy? Is there still a case or controversy here? Your Honor, I meant to address that. And I think there is a problem about whether or not that happened. Judge Pragerson raised the issue that there could have been an expedited appeal of the denial of the preliminary injunction. None of those issues were sought. So there may, in fact, be no further case or controversy presented because how often is Nativo Lopez going to be the subject of a recall petition? How often are the same proponents going to be? Isn't the registrar likely to do what he or she has done before? Yes. I believe the registrar is likely to do that. And so not going to require the petition to be translated. Is that right? I believe that's true because that is the law, is the way the registrar of Orange understands it. Does that create a case or controversy? It could, Your Honor. We would submit that that issue is certainly subject to review. So it would be subject to a further decision somewhere down the line? It could be decided by this Court, Your Honor. We did not argue that there was no case or controversy in briefing to this Court because we do ---- Oh, you're not pursuing the ---- No, I was just addressing the issue as raised by you. And I believe that there is an argument to be made on the other side. We're not taking a position on it. Amicus submitted a suggestion. Perhaps Amicus can speak to it. Certainly. If there's no further questions, thank you, Your Honors. Good morning. I'm Bill Schaffer. I'm here on behalf of the Santa Ana Unified School District and its Board of Education. The district bore the cost of the recall election under Education Code Section 5424, so naturally they want that election preserved to avoid the cost of another election. I think with respect to the issue of mootness, arguably it was moot after the recall election on February 4, 2003. If there was a Voting Rights Act issue at that time, the remedy was to participate fully in the recall election, which the appellant did, as did some other people that opposed the recall election. However, the results of the recall election showed that 69.7 percent of the people recalled Mr. Lopez. So I think that dramatically affects whether this really is a case of controversy. You know, whatever claims the appellants had were really redressed by their ability to participate. If we were to declare that the petition should have been translated, would it affect acts of the district that occurred during the previous term of the man who was elected to replace Mr. Lopez? I don't believe so. I think only if the court declared that the results of the recall election were invalid, in which case they would have to, I guess the court would have to overlook the results of the intervening election on November 2, 2004. But I think if the court. We're not asked to do that. Well, I don't think, from listening to the appellant's argument, I believe that's correct. I think they recognize that, at least I believe they can see, there's no possibility of another recall or another election. You know, Mr. Richardson has been revoted. Well, there's the possibility of another recall, but there's no way of unscrambling the eggnog. Correct. Correct. And the question is whether they could, if another recall came along, could they get review quickly enough to have their issue resolved before it became once again? Well, you know, there's avenues. You know, you can request expedited oral argument. I've been involved in those. You can get expedited briefing. There's ways that cases of urgency can at least, there can be requests made to expedite the process. And in this situation, that wasn't done. But so I think there is opportunities for more rapid review than are presented in this case. But if I may, there's just a couple. I think Ed was right in the recall involving Governor Davis. The embankment was called sui sponte, and things happened after that very quickly. Correct. A different motivation. Well, I mean, I think the appellants pointed out that maybe a local election doesn't have quite the dramatic impact that a statewide election has. But nevertheless, that doesn't prevent an appellant or a petitioner to request expedited review or an embankment review or other types of extraordinary relief or review. But there was a couple of other points that have been raised in argument that, if I may, I'd like to discuss. You know, the approach that the appellants have taken really has, you know, pretty dramatic consequences. And I believe it really will unduly burden the proponents, because the recall election starts or recall starts by publishing a notice of intent to recall. That's the start. You publish it in a paper of general circulation. That's now going to have to be done in multiple languages. You know, the individual is going to have to find out what those languages are, find out what circulate, what newspapers address those particular, you know, languages, and then cause the publication to occur. That then has to be translated onto your statement of intent. That has to appear on the petition. Now, there was a suggestion that on the English version of the petition, you could have a legend on the bottom that states, presumably, if you don't speak English, you know, there's a petition that you can sign in one of these other languages. Well, that is ultimately going to get challenged, either because the legend isn't bold enough or that you're asking someone who doesn't speak English to read a whole petition to get to the bottom or even on the top and realize, oh, gosh, there's other petitions available. I think what's more likely the consequence, it would be you would have five petitions in Orange County and five different tables, all of which are, you know, interpreted. I think that's really what the practical effect would be, which really causes an extreme expense on the circulators of a recall petition, you know. You know, I think a recall, and I think it's a core First Amendment right is to be able to petition, you know, your government for redress of grievances, and recalls are a major aspect of a First Amendment right. And I think it's incumbent, what we would request the Court to recognize, that it shouldn't interpret the Voting Rights Act in a way that is going to chill that First Amendment right or make it so expensive or so burdensome that it's going to discourage recalls. Recalls don't happen that often. You know, petitions are circulated, and they don't all result in an actual election. You know, so what this is directed to is just the preliminary steps before an actual election occurs. Well, during that election, you get your full voting rights. You know, you get, you know, multiple language, you know, interpretations. And that really was provided to these opponents of the recall. And so I think they had their remedy, and that remedy was the February 2003 election. And they lost, and now this is just another shot at trying to undo that election and maybe another election. Well, you've had a successful day because the proponents there have indicated that they're not going to challenge the election, so you don't have to worry about spending more money. Thank you. That's good. All right. What about this content argument that the content is just a checklist? It's not a checklist. Is that all the Registrar of Voters does? No, Your Honor. What the Registrar does is provides a form that actually has blanks to fill in. Among the blanks are a statement about why you want this official recalled. But the introduction to that statement, the introduction to the rebuttal by the targeted official are all within the form that is provided by the Registrar, actually from the Secretary of State through the Registrar. The State is integrally involved in this. What distinguishes this petition from a petition that would have full protection of the First Amendment is precisely that it is related to the electoral process, that it is designed to trigger an election being held before. All they do is just go through a checklist and say, by golly, this has got a title on it and here's the conclusion and the name of the person to be recalled. Is that the process? They do, as I understand it, Your Honor, is they make sure that the form is followed. No one has editorially added things to introduce the targeted official. They look at the language and say, by golly, is this misleading or is this a false statement of the situation here? I don't believe that they do, Your Honor. What they do is make sure that the statements are within the parameters of words provided by the statute, that they follow the format that is provided in the form that is ready to go forward. That's fine. Don't give up all your time. That's a good answer. Again, what I was saying, Your Honor, is that what distinguishes this from another petition, criticizing not Diva Lopez or any other trustee, is the language that they are required to include. They cannot editorialize other than in the restricted statement of why they are targeting the official. They cannot editorialize in introducing the opposition statement by the targeted official. They have to follow a form that is provided by the State. Now, incidentally, of course, form is in the language of Section 203. The district court concluded that this was a format rather than a form, a distinction that I confess to you even today, two years later, I still do not understand. The Section 203 specifically says forms must be provided in the covered language. They also say that any materials related to the electoral process must be provided. I did, Your Honor, want to touch on a few other items. We are talking only about Section 203, not the entirety of the Voting Rights Act. Breyer, to close, because we've been sitting here for a long time. I understand, Your Honor. There was a lot of discussion about the application to other elements of the Voting Rights Act. The language related to electoral process is only within Section 203, and that's what we're talking about. All of the discussion of burden is more of a statement of opposition to Section 203, and the defendants have their opportunity to present that to Congress as it considers whether to reauthorize Section 203 in the year 2007. But that's really an indictment of what the statute requires. It is expensive, but that's what Congress has imposed. And finally, Your Honors, if you conclude that mootness is a serious concern, we would ask for the opportunity to brief that issue. It was not briefed by any of the parties with respect to the recent development in November of another election involving Mr. Richardson. Thank you. All right. Thank you. And the matter is submitted, and the Court will recess until 9 a.m. tomorrow morning. All rise. The Court will adjourn.
judges: Pregerson, Canby, Reed